## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00111-SCT

*JEFFREY WAYNE WANSLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/1999 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/05/2001 |
| MOTION FOR REHEARING FILED: | 4/9/2001; denied 4/26/2001 |
| MANDATE ISSUED: | |

**EN BANC**.

**WALLER, JUSTICE, FOR THE COURT:**

¶1. The State's motion for correction of opinion is granted. The original opinion is withdrawn, and this new opinion substituted in its place.

¶2. Jeffery Wayne Wansley was indicted in the Circuit Court of Newton County for sale of a controlled substance within 1500 feet of a church. After a trial by jury, Wansley was found guilty, and Circuit Judge Marcus D. Gordon sentenced Wansley to a term of thirty years imprisonment. Wansley's post-trial motions were denied by the trial court, and an appeal was initiated before this Court. Finding no reversible error, we affirm the trial court in all respects.

### STATEMENT OF FACTS

¶3. Few facts other than Wansley's conviction and sentence are undisputed. In early August of 1999, Newton County Deputy Sheriff Sammy Stevens questioned Cleveland McCall, a convicted felon, about being in possession of a firearm.[1] No arrest was made, but shortly thereafter, McCall approached Stevens and inquired about assisting the Mississippi Bureau of Narcotics as a confidential informant. Stevens put McCall in contact with agent Stanley Wash and arrangements were made for McCall to assist in undercover drug buys.

¶4. In late August of 1999, McCall, Wash and Stevens met in what is commonly referred to as a pre-buy meeting, where McCall was searched and a body wire was placed on McCall's person McCall was advised that Trellis Windham was the target of the undercover investigation. After the pre-buy meeting, the

threesome set out for Windham's residence. McCall was dropped off a short distance from the Windham residence, with Stevens and Wash monitoring via the body wire. McCall did not find Windham at home, but testified that he conversed with Windham's sister for a few minutes. Both Wash and Stevens denied anyone was present at the Windham residence. Nonetheless, it is undisputed that McCall was absent from the pair for seventeen minutes and that no new search of McCall's person was conducted upon his return to the location where Wash and Stevens were waiting.

¶5. Exactly what took place next in unclear. Upon leaving the Windham residence, according to McCall, the threesome traveled to Don Cleveland's (Trellis Windham's brother-in-law) house, discovered no one home, and left. However, according to Stevens and Wash, after leaving Windham's residence, they traveled directly to Wansley's trailer. In any event, all agree the threesome eventually arrived at the Emanuel Baptist Church, across the highway from Wansley's trailer. From the church parking lot, McCall walked to Wansley's trailer, while Wash and Stevens listened and observed in the vehicle. Wash could not observe McCall as he approached Wansley's trailer; while Stevens, sitting at a different angle in the car, could see McCall approach the trailer and transact with Wansley. Apparently the signal from the body wire was so weak, and the recording of such poor quality, that no tape recording or transcript of the buy was introduced at trial.

¶6. Upon reaching Wansley's trailer, McCall reported that he presented to Wansley a marked one-hundred dollar bill in exchange for six pieces of crack.[2] After the buy, McCall returned to the officers and handed over the crack. Agent Wash maintained care and custody of the questioned substance until the next day, when he submitted it to the crime lab for analysis. Jamie Johnson, of the Mississippi Crime Laboratory, upon analysis found the substance turned in by agent Wash to consist of 0.89 grams of cocaine.

¶7. During direct examination, McCall denied Wansley's trailer sat within 1500 feet of the Emmanuel Baptist Church. Deputy Sheriff Stevens contradicted McCall and emphatically stated that Wansley's trailer was indeed within 1500 feet of the Emmanuel Baptist Church, though no basis of this conclusion was given. Other than these two exchanges, no other testimony or evidence was elicited regarding the distance of Wansley's trailer from the church.[3]

## DISCUSSION

### I. IS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

### A. Sufficiency of the Evidence

¶8. Wansley's counsel argues that, based on conflicting testimony concerning what happened at Trellis Windham's house between McCall and Windham's sister, the body wire used on McCall must have been defective and/or manipulated by McCall. It is further argued that the seventeen minute period spent by McCall at the Windham residence supports the idea that McCall did more than ascertain whether or not Windham was home. As a result of this contradiction, and the failure to re-search McCall after the visit to Windham's, Wansley's counsel argues that it is reasonably possible the McCall performed some sort of sleight-of-hand maneuver, purchasing the crack at Windham's, and transferring the blame to Wansley.

¶9. The additional conflict between the testimony of McCall and the law enforcement officers over whether they visited Windham's brother-in-law, as well as the discrepancy over the distance between Wansley's

trailer and the church, are also argued as facts indicating that Wansley's verdict was against the overwhelming weight of the evidence. Wansley's counsel also alleges that the "incestuous relationship" between McCall and the Newton County Sheriff's office, and the frequent dismissal of charges against McCall in exchange for favorable testimony/assistance, casts a questionable light on McCall's actions in this matter.

¶10. Wansley's counsel requests this Court to take judicial notice of a capital murder case culminating in a death sentence,[4] where McCall's testimony of a cellmate confession was the strongest evidence of the guilt of the accused. It is alleged that two felony charges against McCall were dismissed as a result of his cooperation in the aforementioned case. As no proffer was made, we are unable to understand how the capital murder case relates to McCall's testimony in Wansley's trial. As such, we decline the request to take judicial notice of an unrelated capital murder case.

¶11. This Court's stringent standard of appellate review for challenges to the legal sufficiency of the evidence was recently articulated in *Mangum v. State,* 762 So. 2d 337, 341 (Miss. 2000) :

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

(citations omitted).

¶12. In *Mangum,* we further stated that this Court will order a new trial, "[o]nly where the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand would be to sanction an unconscionable injustice . . . ." *Id.* at 342 (citing *Herring v. State,* 691 So. 2d 948, 957 (Miss. 1997). Although there are considerable discrepancies in the testimony offered by the State, McCall, Stevens and Wash all testified that McCall purchased six rocks of cocaine from Wansley. We have previously held that when a jury is presented with conflicting evidence, any factual disputes are to be resolved by the jury. *See Hiter v. State,* 660 So. 2d 961, 964 (Miss. 1995). After a thorough review of the record, revealing that all contradictions and discrepancies in testimony were heard and considered by the jury, and that the testimony of Wansley and the police consistently implicated Wansley, we affirm the trial court.

### B. Was adequate proof offered of the distance between the church and Wansley's trailer?

¶13. Wansley's counsel urges, in the event we find sufficient evidence to affirm Wansley's conviction, that a resentencing hearing be held. It is argued that the conflict between the prosecution witnesses over whether the transaction took place more or less that 1500 feet from the church rendered impossible proof of this element of the crime. The indictment charged Wansley with the sell of a Schedule II controlled substance within 1500 feet of Emmanuel Baptist Church, in violation of Miss. Code Ann. § 41-29-139(a)(1) and § 41-29-142(1), which grants the trial court the discretion of doubling the punishment of an individual found

guilty of violating these statutes.

¶14. While the record does reveal differing accounts of the distance between Wansley's trailer and the church, it is noticeably absent of any contra-evidence, objection, cross-examination, proffered testimony, or post-trial motion indicating any challenge to the State's charge that Wansley's trailer was indeed within 1500 feet of the Emmanuel Baptist Church. Rather, the first time Wansley challenges the applicability of the statute's enhancement provision is on direct appeal. The State argues that as this matter was not presented to or ruled upon by the trial court, it cannot be considered on appeal.

¶15. This Court has repeatedly held that "we will not consider matters which do not appear in the record and must confine ourselves to what actually appears in the record. Moreover, we cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina v. State,* 688 So. 2d 727, 732 (Miss. 1996).

¶16. Procedural bar aside, we will address Wansley's claim on its merits. Although the jury was presented conflicting testimony regarding the distance between the church and Wansley's trailer, they were instructed that Wansley could only be convicted under Miss. Code Ann. § 41-29-141(1) if they determined that the distance to be within 1500 feet. As the jury was properly instructed, it was within their discretion to decided what evidence was the most credible. Being unable to say the jury erred in reaching their decision, Wansley's request for a resentencing hearing is denied.

## II. WHETHER WANSLEY IS ENTITLED TO RELIEF BASED ON A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

¶17. In his supplemental pro se brief, Wansley claims that his trial counsel was ineffective, resulting in his failure to receive a fair trial. Wansley asserts the following as grounds supporting his claim of ineffective assistance of counsel: 1) counsel failed to communicate with him concerning his case; 2) counsel failed to subpoena witnesses for his defense; 3) counsel was unprepared for trial; 4) counsel failed to seek a continuance in order to familiarize himself with Wansley's case; 5) counsel failed to file a motion for a suppression hearing as requested; 6) counsel failed to object to the seating of a jury whom had previously heard three civil cases; 7) counsel failed to allow Wansley to review discovery materials; 8) counsel failed to inform the court that Wansley had been denied the opportunity to obtain private counsel; and 9) counsel failed to subpoena transcripts from the trial court, with the results that by the time Wansley purchased his own copy, they had been tampered with.

¶18. Ineffective assistance of counsel is analyzed under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): a defendant must show (1) specific acts or omissions on the part of trial counsel indicating deficient performance, and (2) the deficient performance resulted in prejudice to the defendant. *Gilley v. State,* 748 So. 2d 123, 129 (Miss. 1999). "To overcome this presumption, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.*

¶19. Other than making bare allegations of how his counsel was ineffective, Wansley fails to identify specific acts or omissions by his trial counsel that in any way prejudiced his defense. Notwithstanding Wansley's deficient claim, a thorough review of the record convinces this Court that Wansley's trial counsel more than adequately represented Wansley. The record reflects that trial counsel was factually and legally prepared to defend Wansley, and cross-examined the State's witnesses on all pertinent issues. Given the presumption

that counsel is effective, and Wansley's failure to rebut this presumption with an tangible showing that, but for his trial counsel's unprofessional errors, the outcome of his trial would have been different, Wansley's claim of ineffective assistance of counsel is denied as lacking merit.

## CONCLUSION

¶20. For the foregoing reasons, Wansley's conviction and sentence are affirmed.

¶21**. CONVICTION FOR SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF 30 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR VIOLATION OF MISS. CODE ANN. § 41-29-139(a)(1) AND § 41-29-142(1) ARE AFFIRMED**.

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. McCall was cross examined extensively at trial regarding this matter.

2. The arrest was made several weeks after the sale. The marked bill was never recovered.

3. The record does reflect that the jurors were instructed that if they found the transaction between Wansley and McCall to have occurred within 1500 feet of the Emmanuel Baptist Church, then they were to find Wansley guilty as charged.

4. *Gray v. State*, 728 So. 2d 36, 45 (Miss. 1998).